UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rhome J. Calhoun,<br><br>Plaintiff,<br><br>v.<br><br>Washington County Community Services Child Support Unit,<br><br>Defendant. | Civil No. 18-cv-1881 (ECT/HB)<br><br>**REPORT AND RECOMMENDATION** |

Rhome J. Calhoun, P.O. Box 165826, Irving, TX 75016, *pro se*

James R. Andreen and Samantha R. Alsadi, Erstad & Riemer, P.A., 8009 34th Ave. South, Suite 200, Minneapolis, MN 55425, for Defendant Washington County Community Services Child Support Unit

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendant Washington County Community Services Child Support Unit's Motion to Dismiss [Doc. No. 34]. The motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. *See* (Order for Referral [Doc. No. 40].) For the reasons set forth below, the Court recommends that the motion be granted.

I. **Background**

   A. **Procedural History**

Plaintiff Rhome Calhoun, *pro se*, initially filed this case in the United States District Court for the Northern District of Texas on June 8, 2018. (Compl. [Doc. No. 3].)

1

At that time, Plaintiff claimed officers at three different state child support enforcement agencies in Washington State, Los Angeles County, and Minnesota violated his constitutional rights when they enforced child support payment obligations against him. (*Id.*)  The Honorable David C. Godbey, United States District Court Judge of the Northern District of Texas, held that venue was improper and severed Plaintiff's action into three lawsuits.  (Order Transferring to Another District [Doc. No. 11].)  Plaintiff's claims against "State of MN DHS Child Support Enforcement and Ashley L. Parker" were thus transferred to this District on July 3, 2018.  (*Id.*)

Plaintiff filed a second Complaint and "Additional Facts"[1] in this District on September 2, 2018, in which he withdrew claims against the previously named defendants and substituted the Washington County Community Services Child Support Unit (hereafter "Defendant") in their place.  *See* (Am. Compl.; Additional Facts [Doc. No. 25].)  Plaintiff raised two claims in the Amended Complaint: (1) violation of his Fourteenth Amendment due process rights because a Notice and Finding of Financial Responsibility ("NFFR") that established monthly child support payments for Plaintiff's two children was created and signed by someone who was not a judge, and (2) violation of his Fourth Amendment rights because Defendant collected money pursuant to the allegedly unlawful NFFR.  (Am. Compl. ¶¶ 4, 7.)

---

[1] The Court construes these filings, taken together, as an "Amended Complaint."

### B. Allegations in the Complaint

Plaintiff alleges that in 1997, the Washington State Department of Social and Health Services, Division of Child Support issued to Plaintiff a Notice and Finding of Financial Responsibility ("NFFR") that established monthly child support payments for Plaintiff's two children. (Am. Compl. ¶ 7; *see also* Aff. of Samantha R. Alsadi in Supp. of Def.'s Mot. to Dismiss Ex. C [Doc. No. 38-3].[2]) The custodial parent of Plaintiff's children ("Custodial Parent") applied for and received an AFDC Title IV-D loan from Washington State and assigned to that state her rights to the payments received from Plaintiff. (Am. Compl. ¶ 7.) Plaintiff began payments on the AFDC loan in 2000 through income withholding from his paychecks, and the loan was repaid in full as of 2007. *See* (*Id.; see also* Case Payment History, Am. Compl. Ex. 1–4 [Doc. Nos. 24-1 to 24-4].) Plaintiff alleges, however, that the NFFR was not signed by a judge, and was issued in violation of his right to due process under the Fourteenth Amendment.

Plaintiff further alleges that the Custodial Parent moved to Minnesota in 2000 but did not apply for an AFDC Title IV-D loan in this state. (Am. Compl. ¶ 7.) He alleges that Defendant nevertheless began seizing moneys from him, through income withholding and interception of his federal income tax refunds, beginning in 2000 and continuing through the present. (*Id.*) He contends these seizures violate his rights under the Fourth Amendment.

---

[2] Exhibit C to the Alsadi Affidavit is a copy of the NFFR referred to in the Amended Complaint.

Plaintiff asks the Court to order Defendant to return all monies illegally seized, in the amount of $49,733.05; to "clear [his] name from their records; to stop sending income withholding notices to his employers; to stop reporting to credit reporting agencies that he has an outstanding debt in the amount of $40,162; to stop intercepting his income tax refunds; and to stop reporting to the State Department passport control authorities that he is in arrears on his child support obligations. (Am. Compl. at 4.)

On December 21, 2018, Plaintiff filed a "Notice of Petition to Vacate a Void Judgment Coram Non-Judice 'Before a Person Not a Judge' Void for Violation of the 14th Amendment and Must be Vacated Under Federal Rule 60(b)(4) or State Law Equivalent." (Mot. to Vacate Judgment [Doc. No. 31].) The same day, Defendant filed a motion to dismiss Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6).

The Court heard arguments on both motions on February 14, 2019. Plaintiff withdrew his Motion to Vacate Judgment at the hearing for the reasons stated on the record. *See* (Feb. 14, 2019 Minute Entry [Doc. No. 46].) Thus, the only motion before the Court is Defendant's Motion to Dismiss.

## II. Discussion

Plaintiff did not expressly plead claims under 42 U.S.C. § 1983 in the Amended Complaint. But because the Court liberally construes *pro se* pleadings "in a way that permits the layperson's claim to be considered within the proper legal framework," *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), the Court construes the Amended Complaint as setting forth claims under 42 U.S.C. § 1983, which allows a person under certain

4

circumstances to sue a governmental entity for violating his rights under the U.S. Constitution. Defendant appears to recognize as much in its briefing. *See, e.g.,* (Def.'s Mem. in Supp. at 16).

Defendant moves to dismiss the Amended Complaint on three grounds: (1) lack of personal jurisdiction, (2) failure to state a claim upon which relief can be granted, and (3) insufficient service of process. *See generally* (Def.'s Mem. in Supp.) In presenting its arguments, Defendant raised the *Rooker-Feldman* doctrine as a jurisdictional bar to this case. *See* (*id.* at 19–22.) Due to *Rooker-Feldman*'s jurisdictional nature, *see Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995), the Court addresses the doctrine's applicability before considering the other grounds for dismissal advanced by Defendant. For the reasons discussed below, the Court concludes *Rooker-Feldman* does not apply to this case but recommends Defendant's Motion to Dismiss be granted because Defendant is not subject to suit. Moreover, even if Defendant could be sued, the Amended Complaint does not plausibly allege a claim against it under 42 U.S.C. § 1983.

### A. The *Rooker-Feldman* Doctrine

#### 1. Legal Standard

"The *Rooker-Feldman* doctrine stands for the general principle that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction to review state court judicial decisions." *Prince v. Arkansas Bd. of Examiners in Psychology*, 380 F.3d 337, 340 (8th Cir. 2004) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–483 (1983)). *Rooker-Feldman* is narrowly construed. *Lance v. Dennis*, 546 U.S. 459,

464 (2006) (describing *Rooker-Feldman* as "a narrow doctrine"). In particular, the United States Supreme Court has stated that *Rooker-Feldman* "has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002); *see also Van Harken v. City of Chicago,* 103 F.3d 1346, 1348–1349 (7th Cir. 1997) (rejecting the City's "undefended assumption that the doctrine applies to administrative as well as judicial decisions").

### 2. Analysis

Defendant acknowledges the Supreme Court's statement in *Verizon Maryland* that the *Rooker-Feldman* doctrine does not apply to decisions made by state administrative agencies. (Def.'s Mem. in Supp. at 20.) Defendant nonetheless argues that *Rooker-Feldman* bars Plaintiff's lawsuit because, in essence, Plaintiff's failure to exhaust administrative remedies when the NFFR was issued in 1997 transformed the NFFR into "a final order" that is now "equivalent to a state court decision." (*Id.*)

Defendant cites no case law—and the Court has found none—in support of its argument that an administrative agency decision somehow morphed into a state court decision through the passage of time and/or Plaintiff's failure to exhaust his right to appeal. Regardless of how final the NFFR was, it remained a decision of a state administrative agency, not of a state court. It thus follows from *Verizon Maryland* and *Van Harken* that the administrative agency decision at issue here is beyond the reach of *Rooker-Feldman*.

Furthermore, it is well established that failure to exhaust administrative remedies is not a bar to bringing a claim for relief under § 1983. *See Felder v. Casey*, 487 U.S. 131, 147 (1988) (holding that "plaintiffs need not exhaust state administrative remedies before instituting § 1983 suits in federal court"); *Van Harken*, 103 F.3d at 1349 (observing that "[c]ountless cases . . . allow people who lose in state administrative proceedings to seek relief in federal district court under civil rights legislation such as 42 U.S.C. § 1983" without requiring prior exhaustion of administrative remedies).

Accordingly, the Court concludes that *Rooker-Feldman* does not require dismissal of this case. *See Charchenko*, 47 F.3d at 983.

### B.  Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2)

Though county governments have departments that carry out county business, Minnesota law only grants the power to "sue and be sued" to the county itself. *See* Minn. Stat. § 373.01, subd. 1(a)(1) (each *county* in Minnesota "is a body politic and corporate and may . . . [s]ue and be sued"). Thus, it is the *county itself* that must be named in a lawsuit involving the actions of one of its departments. Minn. Stat. § 373.08. Accordingly, departments within a county government are not subject to a court's jurisdiction, and county governmental departments cannot be named in lawsuits. *See Jones v. Brown Cty. Family Serv.*, No. 11-568 (SRN/FLN), 2011 WL 3165052, at *1 (D. Minn. June 30, 2011) (Noel, Mag. J.) ("with regard to the county agency defendants, neither the Brown County Attorney's Office nor the Brown County Family Services Department are entities that can sue or be sued"), *adopted by* 2011 WL 3163308 (July 27, 2011) (Nelson, J.); *cf. Flores v. United States*, 689 F.3d 894, 899 n.4 (8th Cir. 2012)

7

(dismissing county law enforcement departments because they were not legal entities that could sue or be sued).

The only defendant in this case is the Washington County Community Services Child Support Unit, a department within the Washington County government. *See* (Am. Compl.), (Def.'s Mem. in Supp. at 6); *see also Child Support*, Washington County, https://www.co.washington.mn.us/768/Child-Support (last visited Apr. 16, 2019). Accordingly, because Defendant is a department of Washington County's municipal government, Defendant is not subject to suit. *See* Minn. Stat. §§ 373.01, subd. 1(a)(1), 373.08; *see also Jones*, 2011 WL 3165052, at *1.

Ordinarily, the Court would not recommend outright dismissal of a case on this ground, but would recommend that Plaintiff be allowed an opportunity to file a further amended complaint naming the correct defendant. But as the following discussion describes, the Court concludes that in this case, even if Plaintiff's Amended Complaint named a suable entity as a defendant, the Amended Complaint should be dismissed because it fails to state a claim for which relief can be granted.

### C.   Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

#### 1.   Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see also Butler v. Bank of Am., N.A.*, 690 F.3d 959, 961 (8th Cir. 2012). However, the plaintiff must plead facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Labels, bare conclusions, and formulaic recitations of the elements are not enough. *Id.* That is, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted) (second alteration in original).

The Court has a duty to liberally construe *pro se* pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nevertheless, a *pro se* litigant must "still allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted). "[T]he Court may not supply additional facts or fashion a legal theory that assumes facts that have not been pleaded." *Benjamin v. Experian Info. Sols., Inc.*, No. 14-cv-810 (JRT/JJG), 2014 WL 3509044, at *2 (D. Minn. July 15, 2014) (Graham, Mag. J., as adopted by Tunheim, J.) (citing *Stone*, 364 F.3d at 914–915).

### 2.   Analysis

Alleged violations of the Fourth and Fourteenth Amendments, when pleaded properly, can form the basis of claims for relief under Section 1983. *See Burlison v. Springfield Pub. Sch.*, 708 F.3d 1034, 1038–1039 (8th Cir. 2013), *cert. denied* 571 U.S.

825 (2013). But the only claims that can be asserted under 42 U.S.C. § 1983 against a governmental entity are claims under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny.[3] In *Monell*, the Supreme Court held that local governments are not immune from all 42 U.S.C. § 1983 suits, but they may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694. Therefore, the Court reviews Plaintiff's Complaint to determine whether, even if it properly named Washington County as the defendant, it adequately pleads a *Monell* claim.

The Court finds that Plaintiff's claims are facially defective under *Monell*. "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (quotations omitted). In other words, a *Monell* claim requires a showing that the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

---

[3] Plaintiff has not named any individuals as defendants, either in their personal or official capacities, instead naming only a department of Washington County as a defendant. And, although he identifies certain people by name in his "Additional Facts," he identifies them only as sources of information. *Cf. Iheme v. Hennepin Cty. Sheriff Dep't*, No. 12-cv-2269 (DWF/JJK), 2012 WL 8023743, at *3 (D. Minn. Nov. 6, 2012) (Keyes, Mag. J.) ("In order to state an actionable § 1983 claim . . ., the complainant must describe a set of facts showing what the named defendant itself actually did (or failed to do)" (emphasis omitted)), *adopted by* 2013 WL 1881606 (May 6, 2013) (Frank, J.).

With respect to the Fourteenth Amendment due process claim, Plaintiff has failed to identify any official Washington County policy, unofficial custom, or deliberate indifference to train or supervise employees that caused his alleged injuries. *See* (Am. Compl. ¶ 7, Additional Facts.) Instead, Plaintiff alleges that Washington State—not Washington County, Minnesota—was the "moving force" behind his claimed Fourteenth Amendment injury when that state issued the NFFR without a judge's signature and, Plaintiff contends, without affording Defendant due process. *See* (*id.*) That is, any alleged violation of Plaintiff's due process rights related to the creation of the NFFR was the result of action undertaken by an entity separate and distinct from Washington County. Such a claim cannot be maintained against Washington County under *Monell* and Section 1983. *Cf. Slaven v. Engstrom*, 710 F.3d 772, 781 (8th Cir. 2013) (affirming dismissal of a Section 1983 claim against a municipality because the municipality was not the source of the plaintiff's alleged harm). If Plaintiff believes Washington County itself failed to accord him due process, he has not pleaded that, nor facts to support such a claim, in his Amended Complaint.

Similarly, the Amended Complaint does not allege a Fourth Amendment violation based on an official municipal policy, unofficial custom, or deliberately indifferent failure to train or supervise. *See* (Am. Compl. ¶ 7; Additional Facts.) Plaintiff claims Defendant improperly seized his money via income withholding and interception of his federal tax refunds without "a Court Order in accordance with 28 USC Section 1691 or Proof of Undertaking/Validation of a Title IV-D loan under 45 CFR Section 302.50 and

11

42 USC Section 406 . . . ." [4] (Am. Compl. ¶ 7.) Even if one accepts for the sake of argument that a "court order" or "proof of undertaking" was a necessary prerequisite to withholding child support payments from Plaintiff's income, Plaintiff has not identified a Washington County policy or custom or alleged facts showing a deliberately indifferent failure to train or supervise. Without such a basis, Plaintiff's Fourth Amendment-based *Monell* claim is inadequately pleaded. *See, e.g.*, *Gherity v. Pfaff*, 216 F. Supp. 3d 975, 979 (D. Minn. 2016) (Kyle, J.) (citing cases); *Iheme*, 2012 WL 8023743, at *3; *see also Twombly*, 550 U.S. at 555.

But Plaintiff's claims also fail for more fundamental reasons. Even if he were to name Washington County as a defendant, and even if he were to identify a Washington County policy or custom upon which department personnel relied in collecting payments from him, he has not pleaded facts to support a claim that the collection was illegal, let alone unconstitutional, whether under the Fourth Amendment or any other provision. He alleges that a "Court Order" was required by 28 U.S.C. § 1691, but that statute does not require a court order for anything; it merely states that when a federal court issues a writ or other process, it must be issued under seal and signed by the clerk of court. He also alleges that a "Proof of Undertaking/Validation of a Title IV-D loan" was required under 45 CFR § 302.50, but nothing in that regulation indicates that a county is prohibited from

---

[4] 28 U.S.C. § 1691 requires all writs and process issued by a federal court to "be under the seal of the court and signed by the clerk thereof." 45 C.F.R. § 302.50 sets forth basic requirements for state plans pertaining to child and spousal support under the Social Securities Act. 42 U.S.C. § 406 relates to relates to the representation of claimants before the Commissioner of Social Security for certain federal benefits.

collecting child support in the absence of a Title IV-D loan.  As for Plaintiff's reference to 42 U.S.C. § 406, the Court cannot discern any possible relevance to Plaintiff's claims.

Plaintiff has consequently failed to plead facts sufficient to support a Fourth or Fourteenth Amendment claim even under the liberal standard afforded to *pro se* litigants. *See Stone*, 364 F.3d at 914.

Finally, Plaintiff alleges Defendant is "guilty of theft" under Minn. Stat. § 609.52 and "guilty of making a false statement" under 18 U.S.C. § 1001.  (Am. Compl., Additional Facts.)  Minn. Stat. § 609.52 is a criminal code provision.  Assuming for the sake of argument that a governmental entity is subject to civil suit for criminal theft, Plaintiff has not pleaded sufficient facts to show that Washington County's collection of child support payments in reliance on the Washington State NFFR meets any of the required elements under that statute.  As for 18 U.S.C. § 1001, that statute expressly applies to matters "within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States," not, as here, matters of state or local government.

In sum, Plaintiff has failed to state a facially plausible claim for relief, and the Court recommends Defendant's Motion to Dismiss be granted pursuant to Fed. R. Civ. P. 12(b)(6).[5]

---

[5] Defendant also argues that Plaintiff's Amended Complaint should be dismissed because he failed to serve it in accordance with the Federal and Minnesota Rules of Civil Procedure.  (Def.'s Mem. in Supp. at 7–8.)  Ineffective service typically does not require dismissal; instead, the plaintiff may be given additional opportunities to effect service. *Edmonds v. Williams*, No. 14-cv-4535 (DSD/SER), 2015 WL 1399035, at *1 (D. Minn. Mar. 26, 2015) (Doty, J.) (citing *Haley v. Simmons*, 529 F.2d 78, 79 (8th Cir. 1976) (per

### III. Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss [Doc. No. 34] be **GRANTED**; and

2. This case be **DISMISSED without prejudice**.


Dated:  April 23, 2019                                s/ *Hildy Bowbeer*
                                                     HILDY BOWBEER
                                                     United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.

---

curiam)).  The Court therefore does not recommend Defendant's motion be granted on this basis.